**QUESTION OR CONCERN:** The denial of furlough, halfway house or home confinement because of a state detainer. This denial to McClamma, who is "otherwise qualified," is contrary to law.

**SOLUTION REQUESTED:** Grant McClamma a furlough and halfway house or home confinement redesignation.

**GROUNDS:** Despite the fact that the **Interstate Agreement on Detainers** is the only federal statutory authority for detainers and applies only to pending, untried charges, the Department of Justice (BOP) has seen fit to attempt to extend the law of detainer in **28 CFR §524.13**, which says a detainer, by itself, does not ordinarily affect an inmate's program except, for example, custody.

McClamma has had Community Custody since May, 2001 to this date (Ex A, 1), notwithstanding two intervening Detainer Action Letters (Ex. B, 1&2). According to McClamma's latest Program Review Report (Ex. A, 1&2), the only reason for the denial of his requests for furlough, halfway house or home confinement is the "state detainer."

As will be demonstrated in the Memorandum of Fact and Law with Exhibits, the purported detainer is:

1. Void on its face, and/or
2. Invalid as it is outside of the statutory parameters of the only authorization for detainers - The **Interstate Agreement,** and/or
3. Even if the detainer is valid, McClamma is "otherwise qualified" for redesignation to a halfway house or home confinement to complete the last 6 months or 10% of his federal term of imprisonment and the BOP (Warden) has the statutory authority to make that redesignation. **18 USC §4042(a)(2), 18 USC §3621(b), 28 CFR 571.10 .13, P. S. 7310.04, ¶12.a., P. S. 5100.07, Ch 10, ¶ 2.g.**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OF FACT AND LAW WITH EXHIBITS**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

On or about February 18, 2005, McClamma received a Program Review Report (Ex. A, 1&2) reflecting, inter alia:

PENDING CHARGES: State Detainer

CCC RECOMMENDATION: Not eligible due to detainer

OTHER INMATE REQUESTS/TEAM ACTIONS: Request Home Confinement/CCC placement/ Denied due to detainer

Request furlough for wife's surgery/Denied due to State detainer

This same Program Review Report Ex. A, 1&2) shows this inmate with a Projected Release Date of October 21, 2005, that he has "clear conduct," Community Custody, Outstanding Work Performance Rating, Minimum Security Classification, participates in Financial Responsibility and does not require a drug interview. As of October 21, 2005, he will have been in the custody of the Attorney General (BOP) for fifty nine (59) months and twenty one (21) days.

On September 20, 2002, while in the custody of the Attorney General, McClamma appeared in State court for sentencing on a charge of Grand Theft (Ex F, 1-12). As of the date of this Memorandum, that sentence remains incomplete (Ex. F, 5) as will be demonstrated herein.

The State of Florida Department of Corrections provided the Federal Bureau of Prisons with copies of the purported Commitment to Custody and a Judgment and Sentence (Ex. E)(Ex. F, 1-12)  The BOP responded with a Detainer Action Letter to the State of Florida dated 12Feb03 (Ex. B, 1) advising that a detainer had been filed in their favor but that the subject (McClamma) had an unknown release date. On 08Jan04 another Detainer Action Letter (Ex. B, 2) was sent by the BOP to the State of Florida showing a tentative release date for McClamma of 10-21-05.

Each Detainer Action Letter said, in relevant part:

"A detainer has been filed against this subject in your favor charging Service of a 3 year state sentence...to run consecutive to federal sentence."

This efort to lodge a detainer against this inmate fails for at least three reasons:

1. The documents are merely copies of something that may have gone on in state court. They are not certified and they are not directed to the Bureau of Prisons.

2. Accepting them, arguendo, as valid documents, they do not, on their face, comply with federal or state law on detainers.

3. These documents between their four corners and on their face do not represent an "untried indictment, information or complaint" nor are they evidence that this inmate has been "duly convicted and adjudged guilty of and sentenced for said offense."

There are some not inconsequential concepts at work here. The "pecking order" of law in the federal system is The Constitution, Acts of Congress, agency rules and regulations duly enacted and published and, lastly, agency policies such as BOP Program Statements. Except for the Constitution, none of these may stand as effective, enforceable law unless authorized by a law of higher priority.

A detainer is punitive in nature. It is part of the criminal justice system. Even when properly filed under an authorizing law, it will probably result in prejudice to the inmate such as loss of low custody level, furloughs, halfway house, home confinement and even institutional educational opportunities. A detainer is informal, may be filed groundlessly or in bad faith; the accusation need not be proved and no judicial officer is involved.

## THE DETAINER IS INSUFFICIENT ON ITS FACE BETWEEN ITS FOUR CORNERS AND VOID AB INITIO.

## THE DETAINER FAILS, AS A MATTER OF LAW, IN THAT THE ONLY STATUTORY AUTHORITY FOR A DETAINER, FEDERAL OR STATE, IS FOUND IN THE INTERSTATE AGREEMENT ON DETAINERS WHICH APPLIES ONLY TO PENDING UNTRIED INDICTMENTS, INFORMATIONS OR COMPLAINTS – WHICH MCCLAMMA'S CASE IS CLEARLY NOT.

What then are the laws on the books relating to detainer?

The Constitution does not speak to the question of detainers. Presumably, under the police power, Congress may regulate detainers. A search of the United States Code shows only one instance of Congress speaking about detainers. That is found in **18 USC App2, Interstate Agreement on Detainers** called **The Agreement.**

In fairly plain language, **The Agreement** is essentially a speedy trial enactment to force the demanding government, whether state or federal, to put up or shut up. It applies only when:

"...there is pending in any other party state any <u>untried</u> indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner,..." **The Agreement, Article III (a), 18 App 2.** (emphasis supplied)

Going down the pecking order one more step, the **Code of Federal Regulations** mentions detainers once:

**§524.13 Effect of a detainer on an inmate's program.**
The existence of a detainer, by itself, ordinarily does not affect the inmate's <u>program</u>."

The lowest level of authority is the Bureau of Prisons Program Statement. It says:

"**Program Statement 5100.07 Security Designation and Custody Classification Manual**

**6. Type of Detainer.** Enter the appropriate number of points in the box in the right hand column to reflect detainer status... .
   a. If there is a <u>pending</u> <u>charge</u>,... . If the <u>pending</u> <u>charges</u> or detainer... .
   If law enforcement officials <u>indicate</u> <u>a</u> <u>firm</u> <u>intent</u> to lodge a detainer, consider it lodged.

**Program Statement 5130.05** offers the following definitions:

4.a. <u>Detainer</u>. A formal request from a federal, state or local jurisdiction for custody of an inmate upon completion of a term of imprisonment.

4.b. <u>Interstate Agreement on Detainers Act (IADA)</u>
... IADA applies only to <u>untried</u> indictment, information or complaint.

4.d. <u>Charge</u>. Any <u>untried</u> indictment, information or complaint.

5. <u>Lodging a Detainer</u>.
   a. <u>Requirements</u>. For state or local authority to lodge a detainer against an inmate...the requesting authority ordinarily must provide a certified copy of the <u>charges</u>... . (emphasis supplied)

Look again at **P.S. 5100.07:** "If law enforcement officials <u>indicate a firm intent</u> to lodge a detainer,..." (emphasis supplied) A detainer is <u>punitive</u>. Punitive sanctions cannot be imposed on speculation or by "indication." A "Polestar" of construction is that ambiguities in punitive measures must be construed against the government.

Further, it has been held that **The Agreement** represents a pre-emption of the field by Congress and replaces all other non-judicial means for obtaining custody of one incarcerated in another jurisdiction. A court writ is the other way to gain custody.

Whether by **Code of Federal Regulations** or **Program Statement,** the BOP is not free to fashion its own remedies and rules or statements that seek to meet the wishes or "indications" of law enforcement and efforts to do so are invalid.

What may be done?

A detainer is only effective when filed and based on an <u>untried indictment, information or complaint</u> and even a valid detainer should not affect an inmate's program, except as to custody level.

How does this affect Hal S. McClamma and the "detainer" filed with the BOP?

The **Uniform Commitment to Custody of Department of Corrections** which purports to form the basis for McClamma's detainer states **on its face** that McClamma has "been duly convicted and adjudged guilty and <u>sentenced</u> for said offense...." It does not mention any untried indictments, informations or complaints. (Ex. E) There are no pending criminal charges alleged needing speedy trial.

**Ridgeway v. United States,** 558 F.2d 357 (6th Cir. 1977) discusses detainers and particularly cites legislative history - **S. Rep. No. 91-1356 n. 2 at 4865** defines a detainer as a "notification filed with the institution in which a prisoner is serving a sentence, advising that he is wanted to face pending criminal charges in another jurisdiction."

**Ridgeway** goes on to say that "A detainer is simply notice to prison authorities that charges are pending against an inmate elsewhere, requesting the custodian to notify the sender before releasing the inmate. The detainer itself does nothing to affect the prosecution of the inmate. Filing a detainer is an informal process which does not bind the authorities to act."

Continuing:

"The effects of a detainer on an inmate can be profound. Extensive delay in bringing the prisoner to trial is only one of the problems....An inmate may be denied institutional privileges...,or he may be denied trusty status, or he may be considered ineligible to reside on an 'honor farm' or take part in a furlough program."

McClamma's charges are clearly not pending. His plea moved his case past that point. But this is not all. A look at the documents sent to the BOP show a patent ambiguity that would make them void.

The **Uniform Commitment to Custody of Department of Corrections** says on its face:

"The above named defendant having been duly charged with the offense specified herein...and he having been duly

  convicted and adjudged guilty of and <u>sentenced</u> for said
offense by said Court, as appears from the attached certified
copies of Indictment/Information, Judgment and Sentence
and Felony Disposition and Sentence Data form which are
hereby made parts hereof." (Ex. E)

  What is wrong with this assertion? Look at Exhibit F, page 5  and you will see:

  "Restitution to Mrs. Beckham, reserve jurisdiction to enter
amount."

  It becomes immediately apparent that the court has not completed its judicial labors. And make no mistake about it, restitution is an extremely important issue in this case. The Plea Dialogue (Ex. D, 1-4) demonstrates this. The amount of restitution may be substantial or it may be nothing more. The defendant reserved the right to contest restitution figures on appeal. Had these been easy issues the court would have, no doubt, disposed of them at the sentencing hearing on September 20, 2002. There has not yet been another hearing.

  The court has not completed its work and there is not a "final," "certain" and appealable order.

  The usual test of "finality" is whether an appeal may be taken from the acts of the lower court. Appeals are generally permitted from final decisions or judgments. The final judgment rule is embodied in **28 USC §1291.** It is the rule at common law and in most state statutes. (see **Am Jur 2d, Appellate Review, §§84-86)**

  The classic definition of a final decision is that it terminates the litigation on its merits and leaves nothing for the court to do but execute its judgment. (See **Am Jur 2d, Appellate Review § 87**)

  Although there is authority holding the finality of a judgment is not destroyed by reservation of another separable and different cause for future adjudication, be cautioned that a decision awarding but not quantifying damages is not normally final because it leaves unresolved questions that are not collateral to the merits. A decision, to be final, must put the case out of court. In fact, while finality is a key jurisdictional concept in both civil and criminal appeals, it applies with particular force to criminal proceedings because the delay and disruption caused by interlocutory appeals are especially inimical to the effective and fair administration of the criminal law. (See **Am Jur2d Appellate Review §223**).

  No less important in criminal law is the standard of "certainty." Crimes may not be created by inference or constructed nunc pro tunc. These same principles must apply to detainers as well because of their punitive nature.

  The Bureau of Prisons cannot  allow itself to be used as an instrumentality of the State of Florida to do indirectly what the State cannot do directly.

# THE BUREAU OF PRISONS HAS THE AUTHORITY TO DESIGNATE AN INMATE WHO IS OTHERWISE QUALIFIED TO A HALFWAY HOUSE OR TO HOME CONFINEMENT AT ANY TIME DURING HIS PERIOD OF INCARCERATION.

As we have already seen McClamma is "otherwise qualified" because he is serving his sentence at a camp with "community custody", he has never been found to be a flight risk, he has had an exemplary work record, he has completed all educational programs assigned to him, he is in the last seven (7) months of his sentence and the "detainer" either fails (1) because its underlying premise fails or (2) because it simply does not apply, as a matter of law, to this inmate who has **no pending State or federal untried charges.**

As we have seen in this Memorandum that McClamma is otherwise qualified, then we may turn our attention to the "authority" of the BOP to designate an inmate to a halfway house or to home confinement at any time while he is incarcerated in the custody and control of the Attorney General (BOP).

The BOP cannot decide "whether the offender will be imprisoned." That is the court's job. But the BOP surely **must** decide **where** he will be imprisoned - and the Congress and the courts have given the BOP sufficient guidance that it should have no trouble.

The finest case for setting forth the authority of the BOP all the while citing Congress, other appellate courts and the Supreme Court is **Iacaboni v. U.S.**, 251 F.Supp.2d 1015 (D.Mass. 2003). This Memorandum will liberally cite **Iacaboni.**

> For individuals, only three types of sentences are authorized: a term of probation, a fine and a term of imprisonment. 18 U.S.C. § 3551(b). Significantly, this statute does not attempt to break out community confinement as constituting anything other than "imprisonment." Any sentence that is not probation or fine is imprisonment. **Iacaboni,** supra p. 1024

> Thus, the court decides "whether" he will be imprisoned. But where?

> To determine where a sentence of imprisonment shall be served, the controlling statute, 18 U.S.C. § 3621(b) states:
>> The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau may designate **any available penal or correctional facility** that meets minumum standards...that the Bureau determines to be appropriate and suitable.... (emphasis supplied) Id.

> Even without this history, the plain language of § 3621 obviously covers a community confinement facility, and no whisper of anything to the contrary can be found anywhere, in anything Congress has said. Congress intended by this language to authorize the BOP, when it receives an offender to serve a term of imprisonment, to consider

a community confinement designation if appropriate--period. **Iacaboni**, Id

This is not some new invention. There has been a practice since 1965 by the BOP of placing inmates with short sentences into community confinement at the outset of their sentence. The Sentencing Commission and the BOP in its joint report to Congress in 1994 lauded community correction centers, both as to pre-release and community corrections components. Bureau of Prisons, **Report to Congress on the Maximum Utilization of Prison Resources**, 9-10 (1994).
In fact, in 1992, the Attorney General's Office of Legal Counsel produced a Memorandum concluding:

> There is moreover, no statutory basis in section 3621(b) for dist-inguishing between residential community facilities and secure facilities. Because the plain language of section 3621(b) allows BOP to designate "any available penal or correctional facility," we are unwilling to find a limitation on that designation authority based on legislative history.
> **Memorandum from Attorney General's Office of Legal Counsel, to Director, Federal Bureau of Prisons** *4 (mar 25, 1992)
> Cited in **Iacaboni**, page 1027 Id.

Ten years ago the Supreme Court characterized detention within a community treatment center subject to the control of the Attorney General (BOP) as a form of punitive confinement that could be credited against a term of imprisonment. **Reno v. Koray**, 515 US 50, 115 S.Ct. 2021, 132 L.Ed2d 46 (1995). The key in **Koray** was not the detention but the detention **in the custody and control of the Attorney General.**

**Goldings v. Winn**, 383 F.3d 17, 25 (1st Cir. 2004), for example, likewise ascribes the test under § 3621(b) to be "not the place of imprisonment that determines whether an offender is imprisoned but the fact and nature of the offender's sentence ('sentenced to a term of imprisonment') and the identity of the custodian (the BOP)."

Home confinement is entitled to the same consideration as CCC.

For example, 18 U.S.C. § 3624(c) authorizes the BOP to "assure that a prisoner serving a **term of imprisonment**" is given the opportunity to serve as much as six months of the final portion **"of the term"** in home confinement. **Iacaboni**, page 1029 Id.

If the only Congressional choices are probation, fine or imprisonment then when the BOP sends an inmate to a CCC or home confinement before the expiration of his prison sentence, he must be either merely going to a different place of imprisonment or the BOP is making a decision only the courts can make - to release a prisoner from imprisonment before his term is ended.

> Thus, as a matter of law, and a matter of common sense, the argu-ment that community confinement is not a form of imprisonment will not wash. **Iacaboni**, page 1029 Id.

**Iacoboni** and another were challenging a memorandum of a "Principal Deputy Assistant Attorney General" characterizing as unlawful under any circum-stances the long established BOP practice of placing inmates in community

corrections facilities to serve short terms of imprisonment. As we have seen, the court made short shrift of that position.

In as yet unreported cases out of the Southern District of New York, that court likewise gave an Office of Legal Counsel Opinion no efficacy whatsoever on the 6 month 10% issue. Many of the same cases that were cited in **Iacaboni** were used to destroy the Legal Opinion and to find that CCC's and home confinement are places of imprisonment and that the BOP continues to have discretion to designate inmates to those locations. **Zucker v. Menifee**, 03 Civ. 10077 (RJH) (SDNY, Jan. 21, 2004); **Greenfield v. Menifee**, 03 Civ. 8205 (KMW) (SDNY 2004).

McClamma has, in fact, served as a result of contempt in the payment of restitution, fifty four (54) months of a forty three (43) months sentence. His "good time" out date is October 21, 2005 and, but for the Bureau's incorrect position on the validity and effect of the purported detainer, he would be unquestionably qualified for CCC or home confinement in May, 2005. He has done his time and then some - in exemplary style.

## SUMMARY

Denial of McClamma's requests for furlough, community confinement or home confinement for at least the last 6 months or 10% of his <u>term</u> <u>of</u> <u>imprisonment</u> can only be arbitrary, capricious and a denial of Constitutional equal protection of the law for <u>any</u> <u>or</u> <u>all</u> of the following reasons:

### THE DETAINER IS INSUFFICIENT ON ITS FACE BETWEEN ITS FOUR CORNERS AND VOID AB INITIO.

As has been thoroughly briefed in this Memorandum, the Judgment and Sentence in the State case does not, despite the assertion in the **Uniform Commitment to Custody of Department of Corrections** (Ex E), represent a final act of the trial court that could be denominated as a completed sentence. Restitution is punitive in nature, is an integral part of the criminal sentence and, particularly in this case, is of such import (Ex D,2-4) that it could not be resolved at sentencing. Jurisdiction was reserved on the issue of restitution (Ex F,5).

As of the date of this Memorandum over two and one half (2 ½) years have elapsed and the issue of restitution has not been addressed by the State court. The State of Florida has not done its job and yet, in the face of the Interstate Detainer Agreement, would ask the federal Bureau of Prisons to do its dirty work for it and, in so doing, wreak extreme prejudice on this defendant. Despite the assertion in the **Uniform Commitment** (Ex E) the court has not finished its judicial labors and this defendant has not been sentenced. He has no idea whatsoever whether he will be expected to pay no more restitution or several hundred thousand dollars more. He does not have an appealable "final" and "certain" order and would undoubtedly suffer rejection of any attempt to mount an interlocutory appeal in the State criminal matter.

### THE DETAINER FAILS, AS A MATTER OF LAW, IN THAT THE ONLY STATUTORY AUTHORITY FOR A DETAINER, FEDERAL OR STATE IS FOUND IN THE INTERSTATE AGREEMENT ON DETAINERS WHICH APPLIES ONLY TO PENDING UNTRIED INDICTMENTS, INFORMATIONS OR COMPLAINTS - WHICH THIS IS CLEARLY NOT.

Congress has pre-empted the field of detainers and many States (Florida in Fla. Stat. Anno. 941.45 - 941.50) have adopted the **Agreement.** The Bureau of Prisons can try in places like **Program Statement 5130.05** and in **P. S. 5100.07** to make the law of detainer conform to the wishes of law enforcement but as we have seen, supra, the dangers and prejudices of unsupervised "detainer action" are many. The instant case is a perfect example

of the unfairness that emanates from the unfettered use of the detainer. By his plea, McClamma took his State case out of the category of <u>pending</u> and <u>untried</u>.

## THE BUREAU OF PRISONS HAS THE AUTHORITY TO DESIGNATE AN INMATE WHO IS OTHERWISE QUALIFIED TO A HALFWAY HOUSE OR TO HOME CONFINEMENT AT ANY TIME DURING HIS PERIOD OF INCARCERATION.

The **Interstate Detainer Agreement**, an act of Congress, has pre-empted the field and has been adopted by the State of Florida. As such there is simply no statutory authority for the definition contained in **P. S. 5130.05**:

> 4. a. <u>Detainer</u>. A formal request from a federal, state or local jurisdiction for custody of an inmate upon completion of a <u>term of imprisonment</u>. (emphasis supplied)

All too often administrative agencies that don't like the law seek to create their own concept of how things should be by administrative fiat. Even then, this definition gives us some idea of the BOP's thinking in such matters. It does not say upon completion of a <u>secure</u> term of imprisonment.

But what of McClamma's case in particular? **28 CFR § 524.13** says:

> The existence of a detainer, by itself, ordinarily does not affect the inmate's <u>program</u>. An exception may occur where the <u>program</u> is contingent on a specific issue (for example, custody) which is affected by the detainer.

Now, let us assume, arguendo, that the detainer is valid. It would not affect, under the facts of this case, this inmate's redesignation.

If the documents attached hereto as Exhibit A, 1&2 are truly <u>Program Review Reports</u> and a detainer ordinarily does not affect an inmate's <u>program</u> (except for example, custody) and this inmate has had Community Custody continuously since May 21, 2002 (Ex A, 1), even after the Detainer Action Letters of February, 2003 and January, 2004 (Ex B, 1&2) and the only reason contained in the Program Review Report (Ex A, 1&2) to deny McClamma's request for CCC, home detention and furlough was "due to State detainer," then, it is respectfully suggested that the denials of the recommendation and request are in error. The most that can be atrributed to this so called State detainer is that it is a "request from a federal, state or local jurisdiction for notification prior to an inmate's release from a <u>term</u> <u>of</u> <u>imprisonment</u>." (emphasis supplied) **P. S. 5130.05 4. e.**

And...as has been clearly established in this Memorandum, CCC and home confinement after sentencing are part of a <u>term</u> <u>of</u> <u>imprisonment</u>.

This inmate should immediately be redesignated to complete his federal <u>term of imprisonment</u> at a CCC nearest his home, or, based on the letter from his wife's attending physician (Ex C), to home confinement. This is definitely

within the BOP's discretion, and, but for the invalid state detainer, would have already been approved for this inmate to commence in May or June of this year.

As a final note, this redesignation prior to the completion of a <u>term of imprisonment</u> is discretionary, BUT, the BOP must exercise its discretion fairly and even handedly among all inmates lest there be an actionable constitutional denial of equal protection. The Program Review Report (Ex A, 1&2) contains absolutely **NO** other reason for the denial **BUT** the state detainer. If this detainer vanishes or is seen for what it can be at most – a notification – the further denial to this inmate of CCC or halfway house would be arbitrary, capricious and a denial of equal protection.

The State of Florida can be notified of his availability after October 21, 2005 just as easily whether he be in Montgomery, Alabama or Alachua, Florida.

**CONCLUSION**

The denial of McClamma's requests for furlough, halfway house or home confinement is contrary to law whether because:

1. The detainer is insufficient on its face between its four corners and void ab initio, or

2. The detainer fails, as a matter of law, in that the only statutory authority for a detainer, federal or state, is found in the **Agreement** which applies only to pending, untried charges, or

3. McClamma is "otherwise qualified" for halfway house or home confinement according to his Program Review Report and according to the current state of the law, a detainer will not affect his program, except for custody – and he has carried Community Custody without blemish for four years.